FIFTH DIVISION
JUNE 1, 2007

1-05-2279

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| OAK BUILDERS, INC., | ) | No. 04 CH 3755 |
| | ) | |
| Defendant-Appellant | ) | Honorable |
| | ) | Martin Agran, |
| | ) | Judge Presiding. |
| (David Huerta, | ) | |
| | ) | |
| Defendant-Appellee). | ) | |

JUSTICE TULLY delivered the opinion of the court:

This appeal concerns a declaratory judgment action that was brought in the circuit court

of Cook County by plaintiff-appellee, Ohio Casualty Company (Ohio Casualty).  Ohio Casualty

sought a declaratory judgment that its policy did not provide coverage to defendant-appellant,

Oak Builders, Inc. (Oak Builders), for an underlying action brought against Oak Builders by

David Huerta (Huerta),[1]  In the alternative, Ohio Casualty sought a declaratory judgment that any

coverage Ohio Casualty's policy did provide to Oak Builders was excess to Oak Builders'

coverage under a different insurance policy, which was issued to Oak Builders by American

---

[1]Huerta is the plaintiff in the underlying action pending in the circuit court.  Ohio
Casualty named Huerta as "a necessary but nominal party" to its declaratory judgment action.
Ohio Casualty sought no specific relief from Huerta; on the contrary, Huerta was joined "solely
in order to be bound by the judgment entered" in Ohio Casualty's declaratory judgment action.

Family Insurance Company (American Family). Following a hearing on cross summary judgment motions filed by both Ohio Casualty and Oak Builders, the circuit court held that the "additional insured endorsement" in Ohio Casualty's policy provided coverage for Huerta's suit, but that the coverage provided by Ohio Casualty's policy was "excess" to the coverage provided under Oak Builders' policy with American Family. In essence, the circuit court concluded that Ohio Casualty would be liable only if the amount owed in the Huerta suit exceeded the maximum amount recoverable under Oak Builders' policy with American Family.

On appeal, Oak Builders argues that the circuit court's judgment should be reversed because the coverage provided by Ohio Casualty's "additional insured endorsement" was co-primary rather than excess and, therefore, Ohio Casualty and Oak Builders should be liable for a *pro-rata* share of the settlement or judgment in the underlying lawsuit brought by Huerta. For the following reasons, we reverse and remand with directions.

FACTS

On June 17, 2002, Huerta brought an action in the circuit court against Oak Builders, among others, alleging injuries as a result of negligence at a construction site. At the time of the accident at issue in Huerta's personal injury action, Huerta was assigned to perform construction work at the site pursuant to a contract between his employer, JAZ Construction, Inc. (JAZ Construction), and Oak Builders. JAZ Construction was insured by Ohio Casualty under a contractor's liability policy. The contractor's liability policy issued to JAZ Construction by Ohio Casualty contained an "additional insured endorsement," which provided insurance coverage to

Oak Builders as an additional insured. In addition to being insured pursuant to Ohio Casualty's "additional insured endorsement," Oak Builders was insured under a commercial general liability policy issued by American Family.

In response to Huerta's complaint, Oak Builders tendered defense to Ohio Casualty pursuant to its status as an "additional insured" under JAZ Construction's . On November 19, 2002, Oak Builders also filed a third-party complaint against JAZ Construction denying all liability and negligence alleged against it in Huerta's complaint. Additionally, Oak Builders' third-party complaint sought contribution from JAZ Construction, as Huerta's employer, on the grounds that JAZ Construction had committed one or more negligent acts or omissions resulting in Huerta's claimed injuries.

On March 3, 2001, Ohio Casualty filed a declaratory judgment seeking a declaration that Oak Builders was not an additional insured under JAZ Construction's policy for purposes of Huerta's complaint. Ohio Casualty also sought a declaration that, even if Oak Builders was an additional insured for purposes of Huerta's complaint, Ohio Casualty's policy provided Oak Builders with exclusively excess coverage. Ohio Casualty filed a motion for judgment on the pleadings. In addition, Oak Builders filed a motion for summary judgment in which it argued it qualified as an additional insured on the policy issued by Ohio Casualty to JAZ Construction and that Ohio Casualty's policy provided primary coverage to Oak Builders.

Following a hearing, the circuit court granted Oak Builders' motion for summary judgment in part, finding that Oak Builders was an additional insured on the policy issued by

Ohio Casualty to JAZ Construction. The circuit court also found, however, that the Ohio Casualty policy provided "excess" coverage rather than "primary" coverage to Oak Builders because the Ohio Casualty policy's "additional insured endorsement" provided fundamentally excess coverage. The circuit court granted Ohio Casualty's motion for judgment on the pleadings as to this second issue.

Oak Builders filed a motion for reconsideration of the circuit court's ruling that the Ohio Casualty policy provides exclusively excess coverage to the policy issued by American Family. Oak Builders sought a finding that the Ohio Casualty policy and the American Family policy both provide primary coverage to Oak Builders and, therefore, Ohio Casualty has a duty to share the cost of defending and indemnifying Huerta's suit against Oak Builders. The circuit court denied Oak Builders' motion for reconsideration and this timely appeal followed.

## DISCUSSION

This appeal concerns a dispute over the interpretation of "other insurance" clauses contained in the two insurance policies issued to Oak Builders. One insurance policy was issued to Oak Builders by American Family pursuant to a commercial general liability policy and the other insurance policy was issued to Oak Builders by Ohio Casualty pursuant to an "additional insured endorsement." Ohio Casualty asserts that the American Family policy provides "fundamentally primary" coverage to Oak Builders and the "other insurance" clause in Ohio Casualty's "additional insured endorsement" renders Ohio Casualty's coverage "fundamentally excess." As such, Ohio Casualty argues that American Family should be solely responsible for

4

defending and indemnifying the suit brought by Huerta. Oak Builders, on the other hand, contends that both the American Family policy and the Ohio Casualty policy provide "primary" coverage and the "excess" other insurance clauses in the two insurance policies are mutually repugnant. Oak Builders asserts that, because both policies provide "primary" coverage and the two "excess" other insurance clauses are mutually repugnant, American Family and Ohio Casualty should share the cost of defending and indemnifying the action brought by Huerta. We agree with Oak Builders.

A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2d 141, 153 (2004). If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written. Crum & Forster Managers Corp., 156 Ill. 2d at 391. However, if the words used in the policy are ambiguous, they will be strictly construed against the drafter. Central Illinois Light Co., 213 Ill. 2d at 153. It is well settled that the construction of an insurance policy is a question of law and is an appropriate subject for disposition by way of summary judgment. Illinois Farmers Insurance Co. v. Marchwiany, 222 Ill. 2d 472, 476 (2006). Since the construction of an insurance policy is a question of law, our review is de novo. Nicor, Inc. v.

5

Associated Electric & Gas Insurance Services, Ltd., 223 Ill. 2d 407, 416 (2006).

As stated, this case presents a dispute regarding the interpretation of the "other insurance" clauses contained in the American Family policy and in the Ohio Casualty policy. Our supreme court, in Putman v. New Amsterdam Casualty Co., 48 Ill. 2d 71 (1970), provided guidance regarding the different types of "other insurance" clauses and the manner in which disputes involving "other insurance" clauses should be resolved. In Putnam, our supreme court noted that there are generally three types of "other insurance" clauses that tend to appear in insurance contracts: *"pro-rata"* clauses, "excess" clauses, and "escape" clauses. Putnam, 48 Ill. 2d at 76. The Putnam court explained the three types of "other insurance" clauses as follows:

> "The typical *pro-rata* clause provides that when an insured has other insurance available, the company will be liable only for the proportion of the loss represented by the ratio between its policy limit and the total limits of all available insurance. The excess clause allows coverage only 'over and above' other insurance. The escape clause holds the policy null and void with respect to any hazard as to which other insurance exists." Putnam, 48 Ill. 2d at 76.

After explaining the three different types of "other insurance" clauses, the Putnam court adopted the majority rule for resolving "other insurance" disputes and concluded that "other insurance" provisions should be reconciled whenever possible to effectuate the intent of the parties. Putnam, 48 Ill 2d at 77-82. While our supreme court adopted the view that "other insurance" provisions should be reconciled whenever possible, the Putnam court also confirmed

that "when two policies contain the same sort of 'other insurance' clause, the clauses will be deemed incompatible." Padilla v. Norwegian-American Hospital, Inc., 266 Ill. App. 3d 829, 836, citing Putnam, 48 Ill. 2d at 80. The Putnam court reasoned that "this approach is fair when there is no rational basis for applying the clause of one policy and refusing to apply the identical clause of another policy." Putnam, 48 Ill. 2d at 78-79.

In this case, the American Family policy's "other insurance" clause provides, in relevant part, as follows:

"*Other Insurance*:

If valid and collectible insurance is available to [Oak Builders] for a loss we cover under Coverages A or B of this Coverage Part, [American Family's] obligations are limited as follows:

A. Primary Insurance

This insurance is primary except when B, below, applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in C, below.

B. *Excess Insurance*

This insurance is *excess* over:

\*\*\*

(2) *Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured*

*by attachment or endorsement.***" (Emphasis added.)

The "other insurance" clause in the Ohio Casualty "additional insured endorsement," which makes Oak Builders an additional insured because it was a "person or organization whom [JAZ Construction, the named insured, was] required to name as an additional insured on this policy under a written policy or agreement," provides, in relevant part, as follows:

"Any coverage provided hereunder shall be *excess* over any other valid and collectible insurance available to [Oak Builders] whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis." (Emphasis added.)

After reviewing both of these "other insurance" provisions, it is clear that both are "excess" clauses. Indeed, both clauses specifically use the word "excess" and both clauses clearly convey the intent to have insurance coverage only "over and above" other available insurance. See Putnam, 48 Ill. 2d at 76. We must attempt to reconcile "other insurance" clauses whenever possible. However, when, as here, we are faced with two primary insurance policies that contain the same sort of "other insurance" clauses -- specifically, "excess" insurance clauses -- the policies are mutually repugnant and incompatible. See Putnam, 48 Ill. 2d at 80; Padilla, 266 Ill. App. 3d at 836. Faced with these two insurance policies, both of which provide primary coverage for the type of suit brought by Huerta and both of which contain "other insurance" clauses stating that the coverage provided is "excess," we must conclude that the two "excess" clauses cancel each other out and American Family and Ohio Casualty should share the costs

associated with defending and indemnifying the suit brought by Huerta.

In an effort to avoid having to share the cost of defending and indemnifying the suit brought by Huerta against Oak Builders, Ohio Casualty asserts two arguments. First, Ohio Casualty contends that the coverage it provides to Oak Builders "is expressly identified as excess coverage in the Ohio Casualty policy." In other words, Ohio Casualty asserts that Oak Builders' insurance coverage with American Family is "fundamentally primary coverage," while Oak Builders' coverage with Ohio Casualty is "fundamentally excess." What Ohio Casualty overlooks, however, is that both the American Family policy and the Ohio Casualty "additional insured endorsement" provide primary coverage and the intent and purpose of each policy's "other insurance" clause is to convert otherwise primary coverage into excess insurance when other primary insurance covers the loss. Since both policies provide primary coverage and both policies contain the same sort of excess "other insurance" clauses, the "other insurance" clauses are irreconcilable in that following the express terms of one policy would be in direct conflict with the express terms of the other policy; that is, if each "excess" clause was given effect, neither policy would provide primary coverage. In fact, the only way that the two conflicting "excess" clauses could be reconciled would be to read the Ohio Casualty "additional insured endorsement" first and then determine that American Family's coverage is "primary" and Ohio Casualty's coverage is "excess." There is no plausible reason for reading Ohio Casualty's policy first and we believe that Ohio Casualty's approach would lead to an arbitrary result that was not

9

contemplated by the parties.

Second, Ohio Casualty asserts it should not be responsible for sharing with American Family the cost of defending and indemnifying the suit brought by Huerta because the two "excess" clauses are not identical and, therefore, the two clauses can be reconciled.  It is true that the "excess" clause in the Ohio Casualty policy's "additional insured endorsement" and the "excess" clause in the American Family policy do not contain identical verbiage and, in Putnam, our supreme court rejected the proposition that all "other insurance" clauses are repugnant, "<regardless of the nature of the clause.>"  Putnam, 48 Ill. 2d at 79, quoting Lamb-Weston, Inc. v. Oregon Auto Insurance Co., 219 Or. 110, 129 341 P.2d 110, 119 (1959).  However, the Putnam court described the three different types of "other insurance" clauses and concluded that where "other insurance" clauses of the same type are in conflict, it is "impossible to give effect to the intent of all parties."  Putnam, 48 Ill. 2d at 80.  Indeed, in Padilla, relying on our decision in Putnam, we confirmed that "when two policies contain the **same sort** of 'other insurance' clause, the clauses will be deemed incompatible." (Emphasis added.)  Padilla  266 Ill. App. 3d at, 836, Putnam, 48 Ill. 2d at 80.  As discussed above, the American Family policy and the Ohio Casualty's "additional insured endorsement" both contain similar "other insurance" clauses; specifically, both policies contain "excess" insurance clauses.  Since the policies at issue in this case both contain the same type of "other insurance" clauses, we must conclude that the two clauses cannot be reconciled and the parties should share the cost of defending and indemnifying

10

the law suit brought by Huerta.

In sum, we hold that both the American Family policy and the Ohio Casualty policy's "additional insured endorsement" provide primary insurance and both contain the same sort of excess "other insurance" clauses. As such, both insurance companies intended to offer excess insurance if and when other primary insurance was available. We conclude that the "excess" insurance clauses are mutually repugnant and cancel each other out since the only way to give effect to one insurer's intention would be arbitrarily to read one policy's excess clause first and undermine the intention of the insurer whose policy's "excess" insurance clause was read second. Finally, we hold that where, as here, "two policies contain the *same sort* of 'other insurance' clause, the clauses will be deemed incompatible." (Emphasis added.) Padilla 266 Ill. App. 3d 829, 836, Putnam, 48 Ill. 2d at 80. In such cases, the loss is *pro-rated* between the policies.

CONCLUSION

We reverse the judgment of the circuit court and remand the cause for a calculation of the respective liabilities under the American Family policy and the Ohio Casualty policy in accordance with this opinion and the language of the contracts.

Reversed and remanded with directions.

O'MARA FROSSARD and GALLAGHER, JJ., concur.